**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**SAMUEL GARCIA COLINA,**

Petitioner,

v. Civil Action No. **3:26CV480 (RCY)**

**JEFFREY CRAWFORD, *et al.*,**

Respondents.

## MEMORANDUM OPINION

On May 28, 2026, Samuel Garcia Colina ("Petitioner"), proceeding *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("§ 2241 Petition"), alleging that he has been unlawfully detained since his arrest by Immigration and Customs Enforcement ("ICE") officers. For the reasons set forth below, the Court finds that Petitioner's detention without a bond hearing violates the Immigration and Nationality Act ("INA"), and so the Court will order Respondents to provide Petitioner with a standard § 1226(a) bond hearing before an Immigration Judge, in accordance with his statutory rights.

## I. PROCEDURAL HISTORY

On May 28, 2026, Petitioner submitted a signed § 2241 Petition, ECF No. 1, and the Court accordingly ordered Respondent to submit a response. ECF No. 4. On June 10, 2026, Respondents filed their Opposition to the Petition. ECF No. 5. Although Petitioner has not filed a reply, he has filed a letter endeavoring to bolster his credibility and to explain his commitment to the United States. *See* ECF No. 6.

## II. BACKGROUND

Petitioner provides very little information in his § 2241 Petition. Therefore, the Court must rely on the factual background and documentary evidence provided by Respondents.

Petitioner is a native and citizen of Cuba. ECF No. 5, at 5; ECF No. 5-1 at 1. On February 19, 2024, he "was encountered at the San Ysidro, California, port of entry as part of the CBP One Program." ECF No. 5, at 5. The following day, he applied for admission and was paroled into the United States. ECF No. 5, at 5; ECF No. 5-1, at 1. Petitioner was given parole until February 18, 2026. ECF No. 5, at 5; ECF No. 5-1, at 1. On March 9, 2026, Petitioner was encountered by ICE and was the next day served with a Notice to Appear at the Annandale, Virginia Immigration Court on March 23, 2026. ECF No. 5, at 5; ECF No. 5-2, at 1–2. On April 16, 2026, an Immigration Judge ordered Petitioner removed from the United States. ECF No. 5, at 5; ECF No. 5-3, at 1. Petitioner reserved his right to appeal (ECF No. 5-3, at 2) and timely appealed the Order of Removal to the Board of Immigration Appeals (ECF No. 5, at 5).[1]

## III. STANDARD OF REVIEW

28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." *Id.* "A federal court may grant habeas relief 'only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States.'" *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (alternations removed). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

[1] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the spelling, capitalization, and punctuation in the parties' submissions.

## IV. DISCUSSION

Although Petitioner asserts four grounds for relief in his § 2241 Petition (*see* ECF No. 1, at 6–8), all four challenge his continued detention without an opportunity to contest that detention.[2]

### A. Detention Under 8 U.S.C. §§ 1225 and 1226

In recent months, this Court and others have repeatedly analyzed §§ 1225 and 1226 of the INA and coalesced around the consensus that, based on historical application, 8 U.S.C. § 1225(b) and its mandatory detention provisions apply to noncitizens stopped at or near the border who have yet to establish a "presence" in the United States, and that 8 U.S.C. § 1226(a) "establishes 'the default rule' for detaining and removing aliens 'already present in the United States'" and entitles such individuals to a bond hearing. *Hurtado-Barba v. Perry*, No. 3-26-cv-188-MHL, 2026 U.S. Dist. LEXIS 76991, at *6 (E.D. Va. Apr. 8, 2026). On September 10, 2026, the United States Court of Appeals for the Fourth Circuit weighed in on this debate, holding that "Section 1226, not Section 1225, applies to noncitizens who . . . have been present in the United States for years regardless of how they entered our country." *Lopez Garcia v. Guadian*, No. 25-7044, --- F.4th ---, WL 2661092 (4th Cir. Sept. 10, 2026).

The Fourth Circuit's recent decision, though, does not resolve the central issue in this case: whether Petitioner—who was stopped at the border, released on parole, and later encountered by ICE by chance after his parole had expired—is detained subject to § 1225(b) or § 1226(a). Respondent argues that, based on Petitioner's presentation at a port of entry and subsequent release on parole, Petitioner is an "applicant for admission" and, "because [Petitioner] was never lawfully

[2] The Court notes that it lacks Petitioner's original parole documentation, setting out the terms and conditions of his parole and the specific purpose thereof, which would carry implications for the processes by which parole may be terminated, revoked, renewed, or extended. *See, e.g.*, *Hurtado-Barba v. Perry*, No. 3-26-cv-188-MHL, 2026 U.S. Dist. LEXIS 76991, at *7–9 (E.D. Va. Apr. 8, 2026).

admitted, he qualifies as someone seeking admission" and therefore the mandatory detention provisions of § 1225(b) apply. ECF No. 5, at 9–10 (quoting *Jimenez-Rodriguez v. Garland*, 996 F.3d 190, 194 n.2 (4th Cir. 2021)).

**B. Impact of Petitioner's Parole on the §§ 1225/1226 Analysis**

Jurists who have considered the issue presented here have reached a variety of conclusions. Some have determined that § 1225(b) definitively applies to parolees. *See, e.g.*, *Hasan v. Crawford*, 800 F. Supp. 3d 641 (E D. Va. 2025); *Abreu v. Crawford*, No. 1:24-cv-1782-MSN, 2025 U.S. Dist. LEXIS 4328 (E.D. Va. Jan. 8, 2025). Others have avoided the question and found due process deficiencies with respect to the revocation of the petitioners' parole in the first instance, granting habeas relief on that basis. *See, e.g.*, *Pineda-Berrios v. Lyons*, No. 1:25-cv-2332-LMB, 2026 U.S. Dist. LEXIS 29194 (E.D. Va. Feb. 11, 2026); *Hurtado-Barba v. Perry*, No. 3-26-cv-188-MHL, 2026 U.S. Dist. LEXIS 76991 (E.D. Va. Apr. 8, 2026). And this Court and at least one other have found that a "[p]etitioner's multi-year presence" in the country after the expiration of his parole "entitles him to the same constitutional rights as other noncitizens first discovered years after their entry" and thus entitles him to a bond hearing under § 1226(a). *Mejias Martinez v. Lyons*, No. 3:25-cv-1021-RCY, 2026 WL 1257330, at *3 (E.D. Va. May 7, 2026) (quoting *Gomez Villalobos*[3] *v. Crawford*, No. 2:26-cv-12-MSD, 2026 WL 1165576, at *4 (E.D. Va. Apr. 29, 2026)).

Many of the opinions issued in these cases, including this Court's decisions, discussed the so-called "entry fiction," which dictates that "aliens who arrive at ports of entry—even those

[3] In *Mejias Martinez*, the Court utilized the case caption appearing on the LEXIS-published iteration of the case, "*Carlos v. Crawford*"; the Court amends its references herein, without further notation, to cite the Westlaw-published opinion and properly reflect the petitioner's actual last name, Gomez Villalobos. *See Gomez Villalobos*, 2026 WL 1165576, at *1 n.1 (observing that, although the name appearing on the underling petition was "Gomez Villalobos Jhon Carlos," the petitioner's A-Number suggested that his legal name is actually "Jhon Carlos Gomez-Villalobos").

paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)). But as alluded to above, this Court has pushed back against the entry fiction's unfettered application and has granted relief to former parolees who had established sufficient post-parole presence before being re-detained. As the Court explained in *Mejias Martinez*:

> After discussing the INA's historical application and courts' "emerging majority view" concerning §§ 1225(b) and 1226(a), Judge Davis [in *Gomez Villalobos*] proceeded to analyze the impact of Petitioner's parole pursuant to 8 U.S.C. § 1182(d)(5) vis-à-vis his status and rights under the INA. Judge Davis particularly noted that, "[t]hough temporary physical presence in the United States is tolerated when humanitarian parole is granted, it comes with a key 'reservation of rights by the Government': [t]he Government is authorized to continue to 'treat the non-citizen' on parole 'as if stopped at the border.'" *Gomez Villalobos*, 2026 WL 1165576, at *3 (quoting *Martinez v. Hyde*, 792 F. Supp. 3d 211, 215–16 (D. Mass. 2025), which in turn quoted [*Dep't of Homeland Sec. v.*] *Thuraissigiam*, 591 U.S. [103,] 139 [(2020)])) (also citing 8 U.S.C. § 1182(d)(5)(A) for its explanation that humanitarian parole 'shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States"). Judge Davis acknowledged the Supreme Court's assertion that "'even those paroled elsewhere in the country for years pending removal . . . are [fictively] treated for due process purposes as if stopped at the border' when the government later considers their 'rights regarding admission.'" *Id.* at *3 (alteration in *Gomez Villalobos*) (quoting *Thuraissigiam*, 591 U.S. at 139 (cleaned up)).
>
> After noting that Gomez Villalobos's "current detention arguably has earmarks of both § 1225(b), because [Gomez Villalobos] was previously apprehended near the border and paroled under § 1182(d)(5), and § 1226(a), because [Gomez Villalobos] was 'discovered' unlawfully residing in the United States years after his temporary permission to be present expired," Judge Davis proceeded to make his case for why the facts of the case could not "be reasonably construed as a valid continuation of the 'legal fiction' that Petitioner was stopped at the border." *Id.* at *4. Specifically, he wrote as follows:
>
>> First, although controlling precedent clearly establishes that the legal fiction of non-presence as applicable to **admission rights** can continue for several years, *Thuraissigiam*, 591 U.S. at 139, some

> district courts have concluded that *Thuraissigiam* does not directly address whether this fiction extends to the right to be free from **detention** without the minimal process of a detention hearing. *See Torres v. Hermosillo*, No. 2:25cv2687, 2026 WL 145715, at *4 (W.D. Wash. Jan. 20, 2026) (explaining that the "entry fiction applied by the Supreme Court in *Thuraissigiam* applied only to noncitizens' rights regarding **admission** and that "the Supreme Court has never applied the entry fiction doctrine . . . to constitutionally justify the **detention** of a person living freely, for years, within the United States" (citations omitted)). To the extent that *Thuraissigiam* does not extend to detention procedures, this Court finds that Petitioner's multi-year presence in the United States entitles him to the same constitutional rights as other noncitizens first discovered years after their entry. *See Rincon v. Hyde*, 810 F. Supp. 3d 101, 113 (D. Mass. 2025) (ordering a bond hearing after observing that "to apply the entry fiction doctrine to [a petitioner that was on humanitarian parole for more than three years] is to set aside the plain meaning of the Fifth Amendment altogether"); *Strunin v. Garcia*, No. 5:26cv106, 2026 WL 958952, at *8 (S.D. Tex. Mar. 3, 2026) ("Pretending that Petitioner never entered the United States [during the years he was a parolee] not only subordinates fact to fiction, it disregards the plain meaning of the Due Process Clause, which promises its protection to every 'person' within the United States." (quoting *Torres*, 2026 WL 145715, at *4)); *Singh v. Bondi*, No. SA-26-CA-00541-XR, 2026 WL 752457, at *8 (W.D. Tex. Mar. 16, 2026) ("Noncitizens who have lived with relative freedom in the United States for extended periods—unlike those detained in immigration processing centers at the border—cannot reasonably be deemed never to have been 'here.'"); *see also Zadvydas* [*v. Davis*], 533 U.S. [678,] 693 [(2001)] (discussing the due process protections that emerge "once an alien enters the country," even if their presence is both unlawful and temporary).
>
> Second, even accepting that the "legal fiction" of non-presence recognized in *Thuraissigiam* extends to **detention** procedures as applied in Q. Li, this Court finds that such fiction ends when a petitioner has enjoyed years of **post-parole** presence. Importantly, unlike in Q. Li, where the noncitizen's parole continued until she was re-detained, Petitioner's brief two-month parole period was followed by more than two and a half years of unauthorized but actual presence.

*Id.* at *4–5 (emphases in original). Judge Davis found compelling the explanation by another district judge facing similar circumstances, quoting as follows:

> Petitioner is not subject to the entry fiction despite his previous parole into the United States. As this Court has repeatedly stated, Petitioner's parole expired and he continued to remain in the United States for over a year before he was detained. As a result, Petitioner had a similar status to any other undocumented immigrant who entered the United States without inspection and without DHS having any clue as to their whereabouts.

> *Id.* at *5 (quoting *Rodriguez v. Fields*, No. CV 26-117, 2026 WL 1078101, at *11 (E.D. Ky. Apr. 21, 2026)) (further citing *Escalona v. Noem*, No. 2:26cv769, 2026 WL 885025, at *1 (M.D. Fla. Apr. 1, 2026), which explained in a case where the petitioner overstayed his parole by six months that "[a]pplying § 1225(b)(2) to noncitizens years after they were paroled into the country does not comport with the policy justification for treating noncitizens [already present] in the country differently than those seeking entry").

> The Court finds this logic particularly compelling given that, as in *Gomez Villalobos*, Petitioner in this case was not detained in connection with the expiration and termination[[4]] of his parole, but rather was simply detained after ICE agents randomly "encountered" him and "confirm[ed] Petitioner's identity, nationality, and removability." Byrne Decl. ¶ 10; *accord Gomez Villalobos*, 2026 WL 1165576, at *5. And so, the Court adopts Judge Davis's reasoning and likewise finds that, "like a noncitizen who unlawfully enters the United States and is present for years prior to being detected, here, after Petitioner's short-term parole ended, Petitioner established a multi-year presence prior to being 'rediscovered.'" *Gomez Villalobos*, 2026 WL 1165576, at *5; *accord Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 307 (E.D.N.Y. 2025) ("[I]t would be illogical to find that [the petitioner] is still in the process of 'arriving' in the United States when she has been continuously residing in the United States for more than three years after the expiration of her humanitarian parole."). "Precedent thus supports the finding that Petitioner's multi-year unapproved presence affords him some basic procedural due process rights, which here take the form of a full and fair hearing under § 1226(a) to determine the propriety of his continued detention." *Gomez Villalobos*, 2026 WL 1165576, at *5 (citing *Zadvydas*, 533 U.S. at 693).

*Mejias Martinez*, 2026 WL 1257330, at *4–5 (first, fourth through sixth, and ninth through eleventh alterations added).

[4] And again, the record is incomplete with respect to whether Petitioner's parole was even subject to automatic termination without notice and an individualized determination with respect to removal. *See Hurtado-Barba*, 2026 U.S. Dist. LEXIS 76991, *8–9 (describing the statutory processes for revocation and termination of humanitarian parole).

Several courts outside of this District have gone further, rejecting outright the entry fiction's application in cases such as this, finding that although it unquestionably applies in challenges regarding the admission process, it definitively does not apply to challenges to civil detention following the expiration of one's parole, and that § 1226 consequently applies. *See, e.g.*, *Khasanova v. Rokosky*, No. CV-26-00763-PHX-JCH (JFM), 2026 WL 1815723, at *4 (D. Ariz. June 24, 2026) (opining that, "where a petitioner does not challenge the admission process in any way or assert a right to remain in the United States, the entry fiction doctrine does not apply" and "neither a bond hearing nor release equate to admission" (cleaned up)); *Abdyrakhmanov v. Baltazar*, No. 26-cv-01875-NYW, 2026 WL 1800941, at *5 (D. Colo. June 23, 2026); *Qasemi v. Francis*, No. 25-cv-10029 (LJL), 2025 WL 3654098, at *11 (S.D.N.Y. Dec. 17, 2025) ("A noncitizen is not reverted by operation of law to status as an arriving alien—they remain a noncitizen living in the United States who used to be paroled and must be treated by the INA accordingly."). Consistent with this reasoning, for some courts, a petitioner's "actual presence within the United States at the time of [his or her] rearrest" following the expiration of parole is enough to render § 1226 the operative statute governing his detention. *See, e.g.*, *Campbell v. Almodovar*, No. 1:25-cv-09509 (JLR), 2025 WL 3538351, at *9 (S.D.N.Y. Dec. 10, 2025).

At least one district court appears to have split the difference between the approaches taken by this Court and those just discussed. Indeed, in *Cabrera Martinez v. Marich*, the United States District Court for the Western District of New York ostensibly held that "the 'entry fiction' ends once a person has been living in the country after parole expires." 816 F. Supp. 3d 356, 373 (W.D.N.Y. Dec. 31, 2025). Nevertheless, in a footnote, the court indicated that "some minimum period of time" likely must pass to overcome the fiction that "someone granted parole remains at the border." *Id.* at 367, n.7. That court declined to "weigh in on how long the minimum period of

time must be" but explicitly found that "several months is certainly enough." *Id.* And in a more recent case discussing *Cabrera Martinez*, the same court rebuffed the Government's argument that an individual detained "a mere 45 days" after the expiration of his parole "should be deemed as if stopped at the border under the parole 'entry fiction,'" finding that "the same statutory analysis [set out in *Cabrera Martinez*] applie[d]" and that the petitioner had accrued "unlawful presence time" such that § 1226 rather than § 1225 applied. *Granado v. Bausch*, No. 26-CV-1260-LJV, 2026 WL 2055988, at *2 (W.D.N.Y. July 16, 2026). Consistent with this reasoning, another court yet has found that it was "implausible" that an individual re-detained "more than two years after he initially entered the country and more than three months since his parole expired" remained "an arriving alien." *Adelson v. Mullin*, No. CIV-26-1997-J, 2026 WL 2731362, at *3 (W.D. Okla. Sept. 16, 2026) (internal quotation marks omitted).

Although the Court finds persuasive many of the cases deeming the entry fiction inapplicable in situations such as Petitioner's, it needs not fully adopt their reasoning or even deviate far from the logic set out in *Meijas Martinez* to grant Petitioner relief here. Indeed, here, as there, Petitioner was detained within the United States only after immigration enforcement agents happened to encounter him. That this random encounter occurred only weeks after Petitioner's parole had expired does not mean that Petitioner did not accrue "unlawful presence time" such that § 1226 should not apply. *Granado*, 2026 WL 2055988, at *2; *see Adelson*, 2026 WL 2731362, at *3. Accordingly, as the Court determined in *Mejias Martinez*, and consistent with other district courts' findings that any requirement that a detainee need be present in the United States after the expiration of his parole for only a minimal period of time to overcome the entry fiction, the Court holds that Petitioner is entitled to a bond hearing pursuant to § 1226(a).

## V. CONCLUSION

For the reasons set forth above, Petitioner's § 2241 Petition, ECF No. 1, will be GRANTED. The Court will order Respondent to provide Petitioner with a standard § 1226(a) bond hearing before an Immigration Judge.

An appropriate Order will issue.

/s/ RCY
Roderick C. Young
United States District Judge

Date: September 23, 2026
Richmond, Virginia